DECISION AND JUDGMENT ENTRY
This is an appeal from the February 28, 2000, judgment of the Erie County Court of Common Pleas, Domestic Relations Division and Juvenile Divisions, which sustained the report and recommendations filed by the referee on February 2, 1995.[1] For the reasons that follow we reverse the decision of the trial court.
Appellant, Edward Hastings, raises the following as his assignments of error:
"First Assignment of Error
 "I. THE TRIAL COURT ABUSED ITS DECISION REFUSING TO DEDUCT ORDINARY AND NECESSARY CASH AND BUSINESS EXPENDITURES FROM APPELLANT'S SELF-GENERATED GROSS INCOME WHEN CALCULATING THE APPELLANT'S INCOME FOR CHILD SUPPORT PURPOSES
"Second Assignment of Error
 "II. THE TRIAL COURT ABUSED ITS DISCRETION, COMMITTED PREJUDICIAL ERROR AND VIOLATED RULE 40 OF THE SUPREME COURT RULES OF SUPERINTENDENCE AND SECTION 2701 OF THE OHIO REVISED CODE FOR MAKING THE APPELLANT WAIT FIVE YEARS FOR A DECISION ON A TIMELY-FILED OBJECTION [TO] A REPORT OF THE REFEREE"
Appellee, Virginia Hastings, filed no response to appellant's brief.
The relevant facts are as follows. On December 27, 1993, appellee filed a "Motion for Liquidation of Arrears and Motion for Increase," asserting that appellant was in arrears as he had failed to pay child support for their daughter in the amount of $35 per week, as ordered by the trial court on September 8, 1986, and sought to increase appellant's child support obligation. The matter came for hearing on October 4, 1994.
Appellant was present pro se at the hearing on appellee's motion and appellee was represented by counsel. Judy Schoewe, Erie County CSCA, testified that appellant was in arrears in excess of $3,000. Appellant testified that he was a self-employed painter and sole proprietor of his business, Ohio Diversified Contractors. Appellant also testified that he lived with his mother and paid her for room and board out of the business checking account.
Upon reviewing his 1993 tax return, appellant testified that his gross receipts were $199,000; cost of goods totaled $77,295; truck expenses, which included gas, repairs, and travel time, totaled $6,204; insurance, which included workmen's compensation, liability insurance, insurance on the warehouse, and automobile insurance, totaled $15,952; unspecified "legal and profession services" totaled $6,703; office expenses, including rent, utilities and office equipment, totaled $6,464; and office rent on the warehouse totaled $25,800. After receiving his deductions, appellant's adjusted gross income ("AGI") in 1993 was $6,732.[2] Appellant had as many as twelve employees in 1993, but had only himself and two other employees at the time of the hearing because he earned less the more employees he employed. As such, he anticipated earning approximately $20,000 in 1994.
Appellant further testified that he did not give himself a paycheck out of the business account, but instead drew his monthly income through the expense checks he wrote to himself. Appellant, however, testified that the "expense" checks he wrote to himself went back into the business for "gasoline and whatever." Sometimes, according to appellant, he also would have to pay cash for work gloves. Appellant additionally testified that there were no credit cards used for expenses or gasoline.
When examined by the referee, appellant testified that his employees earned $15 per hour, totaling approximately $20,000 each year, whereas he earned only about $6,900 yearly as the owner of the business and a journeyman painter. He also testified that a journeyman painter earned $17 per hour, union wages. Appellant further testified that, if he was employed by someone else, he would earn $20,000 to $30,000 per year. Appellant testified that he worked forty or more hours per week all year long.
On February 2, 1995, the referee filed a report and recommendations concerning appellee's motion. The referee found that appellant had gross receipts of $199,000, labor costs totaling $53,354, and materials and supplies costs totaling $68,258, which left appellant with a gross profit totaling $77,295.[3] Additionally, the referee found that appellant listed the following as business expenses:
"$ 6,204.00 Car and truck
1,053.00 Depreciation deduction
15,952.00 Insurance
6,703.00 Legal Services
6,464.00 Office Expenses
25,800.00 Other Property
4,203.00 Travel
1,498.00 Entertainment and meals
2,174.00 Utilities
Totaling $ 70,051.00"
With respect to these listed expenses, the referee found: (1) appellant did not know what services were provided under the legal services expense; (2) the $6,464 listed as "Office Expenses" was actually for rent of an office, and other office related expenses at 640 Camp Street, Sandusky, Ohio; (3) the $25,800 "Other Property Expense" was for a $1,700 per month lease to store items at 640 Camp Street; (4) appellant had two full-time employees that were paid $15 per hour, that a journeyman makes $17 per hour, that appellant was a journeyman painter, and that appellant paid over $53,000 in salaries for 1993; (5) appellant did not pay himself a weekly wage, but received his pay by "expense" and "labor" checks; (6) appellant paid $400 per month to his mother for room and board; (7) "[t]he expense and labor checks, room and board checks, and child support checks paid for other children total $34,232.39." Accordingly, the referee concluded the following:
 "[Appellant's] gross income is somewhere in the $30,000.000 per year range. If we use his 1993 tax return and add his adjusted gross income of $6,732.00 to the depreciation expense of $1,053.00, fees of $6,464.00 and the other questionable property expense of $25,800.00, the Defendant's income totals $40,049.00.
 "If we use an income imputed from what he pays his employees, his 1993 income is $31,200.00. If we use the higher journeyman's rate of $17.00 per hour his imputed income is $35,360.00.
 "According to the Defendant's checking account, he received $34,232.39 in funds from his business accounts.
 "The checking account records seem to be an accurate reflection of the income Defendant received in 1994 [sic],[4] $34,232.39 should be used to calculate his support obligation."
As such, the referee recommended that appellee's motion be granted and that appellant's child support should be $507.46 per month, plus $50 to be paid toward his arrears.
On February 14, 1995, with counsel, appellant filed objections to the referee's report and recommendation. Specifically, appellant objected to the trial court using appellant's checking account, instead of acceptable accounting practices and principles, to determine appellant's income for purposes of calculating child support. On March 14, 1995, appellant filed supplemental objections to the referee's report. Appellant argued that it was error for the referee to rely on amounts deposited to his checking account because appellant established that the funds in his checking account were used for justifiable business expenses during the year. Appellant additionally argued that the referee failed to apply R.C.3113.215(A)(3), regarding the calculation of the amount of a child support obligation. Further appellant argued that "[t]here was no basis in fact or law for the Referee to impune [sic] as income to [appellant] expenses paid to [him] in 1993 totaling [sic] approximately $24,450.00 as [appellant's] income for child support purposes." Appellee responded that the referee's calculations were reasonable, based on the evidence, and that the referee's report should be adopted.
Appellant's objections were eventually ruled on by the trial court on February 28, 2000. The trial court sustained the referee's report and recommendation and held that "the business expenses [appellant] claimed for tax purposes were properly included in the computation of [appellant's] income for the purposes of determining child support." The trial court then simply restated the referee's findings of fact and conclusions of law verbatim. It is from this judgment that appellant appeals.
In his first assignment of error, appellant argues that the trial court abused its discretion by refusing to deduct ordinary and necessary cash and business expenditures from appellant's self-generated gross income when calculating his income for child support purposes.
For purposes of calculating the amount of child support obligation, R.C. 3113.215(A)(1) states that "income" means either (a) the gross income of the parent who is employed to full capacity or (b) the sum of the gross income of a parent who is unemployed or underemployed, and any potential income of the parent. Pursuant to R.C. 3113.215(A)(3), "Self-generated income" is defined as follows:
 "gross receipts received by a parent from self-employment, proprietorship of a business, * * * minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. `Self-generated income' includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including, but not limited to, company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses."
R.C. 3113.215(A)(4)(a) defines "Ordinary and necessary expenses incurred in generating gross receipts" as follows:
 "actual cash items expended by the parent or the parent's business and includes depreciation expenses of replacement business equipment as shown on the books of a business entity."
"Ordinary and necessary expenses incurred in generating gross receipts," however, "does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business." R.C. 3113.215(A)(4)(b).
If the trial court finds a parent is underemployed, the court must consider "potential income;" that is, income that the parent would have earned if he or she had been "fully employed." R.C. 3113.215(A)(5)(a). That amount is to be determined by (1) the parent's employment potential and probable earnings based on the parent's recent work history, (2) job qualifications, and (3) the prevailing job opportunities and salary levels in the community in which the parent resides. Rock v. Cabral
(1993), 67 Ohio St.3d 108, syllabus.
In this case, in computing appellant's income, the trial court simply held that appellant's income equaled the amount of money he withdrew from his business checking account, i.e., $34,232.39. This amount was determined by adding together the checks made out to appellant, personally, for "labor" and "expenses," as well as, checks written to appellant's mother, with whom he lived, for "room and board," and checks written for child support that went toward arrearages on another child's account.
Upon a thorough review of the record, it is clear that the trial court failed to consider or deduct the ordinary and necessary expenses incurred by appellant in generating his gross receipts. See R.C. 3113.215(A)(3). For example, appellant testified that the "expense" funds received by him were used to pay for gasoline and business related matters, yet no deduction was made for these expenses by the trial court. Additionally, we note that the trial court discussed what income amount could be used to impute appellant's income, but the trial court did not find that appellant was underemployed, or that income should be imputed, and did not use these other income amounts in its calculation. Instead, the trial court relied solely upon the funds withdrawn by appellant from the business account in computing his income, but failed to deduct any ordinary and necessary business expenses that were paid out of these funds.
Accordingly, we find that the trial court abused its discretion by failing to comply with R.C. 3113.215 in computing appellant's income. Appellant's first assignment of error is therefore found well-taken.
In his second assignment of error, appellant argues that the trial court abused its discretion, committed prejudicial error, and violated C.P.Sup.R. 40, and R.C. 2701.02, by making appellant wait five years for a decision on his objections to the referee's report. Appellant asserts that we should overturn the decision of the trial court on these bases. We disagree.
C.P.Sup.R. 40(A) states, "All motions shall be ruled upon within one hundred twenty days from the date the motion was filed, except as otherwise noted on the report forms."[5] R.C. 2701.02 states that a motion "shall be determined and adjudicated within thirty days after such submission." It is well-settled that the time limit in R.C. 2701.02 for acting on motion is directory only and, although binding upon the conscience of the judge, is not jurisdictional, and failure to render an adjudication within the time specified does not oust the court of jurisdiction. Kyes v. Pennsylvania RR. Co. (1952), 158 Ohio St. 362, paragraph seven of the syllabus. Additionally, C.P.Sup.R. 40(A), formerly C.P.Sup.R. 6(A), creates no rights in individual defendants and does not confer a right in a litigant to have a motion ruled upon within one-hundred-twenty days. Rodgers v. Cuyahoga Cty. Court of Common Pleas
(1992), 83 Ohio App.3d 684, 686. The cases cited by appellant are not contrary to these well-established principles.
Moreover, in this case, unlike Cellars v. McKinnon (Sept. 1, 1989), Trumbull App. No. 4046, unreported, appellant suffered no prejudice by the trial court's delay. The evidence was properly preserved for review by this court and a full transcript of the hearing was prepared and included in the record.
Accordingly, we find appellant's second assignment of error not well-taken.
On consideration whereof, the court finds substantial justice has not been done the party complaining and the judgment of the Erie County Court of Common Pleas, Domestic Relations Division and Juvenile Divisions, is reversed. This matter is remanded to the trial court for further proceedings in accordance with this decision. Costs of this appeal to be paid by appellee, Virginia Hastings.
 ___________________________________ Richard W. Knepper, P.J.
 Melvin L. Resnick, J., James R. Sherck, J., JUDGES CONCUR.
[1] The trial court stated that the delay in ruling on appellant's objections to the referee's report and recommendations was due to an administrative error by the court and that no prejudice resulted to appellant.
[2] Appellant's AGI for 1992 totaled $6,931 and $20,244 in 1991.
[3] Our computation of the referee's numbers would leave appellant with a gross profit of $77,388, not $77,295.
[4] This income is actually from 1993, not 1994.
[5] C.P.Sup.R. 40(A) is identical to former C.P.Sup.R. 6.